## COMMISSIONER OF INTERNAL REVENUE v. O. P. P. HOLDING CORPORATION.

### No. 220.

Circuit Court of Appeals, Second Circuit.
March 4, 1935.

For the opinion below, see 30 B. T. A. 337.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Thomas A. Carpenter, Sp. Assts. to Atty. Gen., for petitioner.

Louis A. Gravelle, of Washington, D. C. (A. Loeb Salkin, of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This case involves the income tax liability of O. P. P. Holding Corporation, hereafter referred to as the taxpayer, for the fiscal year ending July 31, 1930. The Commissioner disallowed a deduction of $20,000 from gross income which the taxpayer claimed to be a payment of interest on its debenture bonds. The Board of Tax Appeals reversed this determination, with the result that no deficiency in tax exists. The Commissioner has appealed.

The taxpayer was incorporated under the laws of New York on June 20, 1929, with an authorized capital of $20,000, consisting of 2,000 common shares. On June 25th it purchased all the capital stock of Oneida Paper Products, Inc., a New York corporation, and paid the sellers thereof 1,000 shares of its own stock and $250,000 of its debenture bonds dated as of July 1, 1929, maturing June 30, 1954, and bearing interest at 8 per cent. per annum. The stock of Oneida Paper Products, Inc., had a book value of $129,785.51, taking the inventories and fixed assets at cost and including nothing for good will. A schedule of net sales, net in-

come, and compensation to officers shows that the Oneida Company has enjoyed a progressive increase in its business and had a net income of $26,000 for the year ending July 31, 1929. On its books the taxpayer set up on the asset side the Oneida stock at $260,000, and on the liability side put its debenture bonds at $250,000 and its capital stock at $10,000. Payments on the bonds were always recorded as "interest." During the fiscal year ending July 31, 1930, the taxpayer received a dividend of $20,000 on the Oneida stock. During the same period it paid to holders of its debenture bonds the sum of $20,000 as interest. The taxpayer and its wholly owned affiliate, Oneida Paper Products, Inc., filed a consolidated income tax return, including in gross expense the said interest payment on the debenture bonds. This deduction the Commissioner disallowed on the theory that it represented a dividend payment, since he regarded the bonds as of the nature of preferred stock. The Board disagreed with his ruling. The sole question is whether the "interest" payment constituted a legal deduction under section 23 (b) of the Revenue Act of 1928 (45 Stat. 799, 26 USCA § 2023 (b). See, also, Treas. Reg. 74, art. 141.

The debenture bonds contain certain unusual provisions upon which the petitioner strongly relies in urging that they should be treated as certificates of preferred stock. They are subordinated, both as to principal and interest, to the claims of all other creditors; and the company may at its option suspend or defer the payment of interest, "but such suspension of payment shall in nowise relieve the Corporation of the obligation to pay the same at some future time." It was also provided that the company should pay no dividend upon its stock unless all interest on its debenture bonds should have been paid in full. The bonds had a definite maturity date (unless sooner called), namely, June 30, 1954, although holders of two-thirds of the outstanding bonds might extend the date for all.

We do not think it fatal to the debenture holder's status as a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. The final criterion between creditor and shareholder we believe to be the contingency of payment. The shareholder is entitled to nothing, prior to liquidation, except out of earn-

ings. Even on liquidation, at least in New York, arrears of cumulative dividends are confined to earnings. Michael v. Cayey-Caguas Tobacco Co., 190 App. Div. 618, 180 N. Y. S. 532. These debenture bondholders were not so limited. The interest could be deferred, but it was not lost, though the company had no earnings; it could be collected, together with the principal, in 1954, from the corpus of the debtor's property, regardless of whether there should be a surplus. See Warren v. King, 108 U. S. 389, 399, 2 S. Ct. 789, 27 L. Ed. 769. This distinction marks the vital difference between the shareholder and the creditor. The shareholder is an adventurer in the corporate business; he takes the risk, and profits from success. The creditor, in compensation for not sharing the profits, is to be paid independently of the risk of success, and gets a right to dip into the capital when the payment date arrives. The courts have very frequently been called upon to determine whether the rights of a claimant are those of shareholder or creditor. Each case has turned on its special facts, and to cite them all would not be useful, if it were possible. We think all the decisions which we have examined may be harmonized by adopting the criterion above suggested. The decision of this court in Re Fechheimer Fishel Co., 212 F. 357, is entirely consistent with this view. There interest on the so-called bonds was to be paid only out of earnings, and upon liquidation or dissolution the whole residue of the corporate assets after payment of the debts was to go to the bondholders. Hazel Atlas Glass Co. v. Van Dyk & Reeves, 8 F.(2d) 716 (C. C. A. 2), has nothing to the contrary. In Kentucky River Coal Corp. v. Lucas (D. C.) 51 F.(2d) 586, affirmed, 63 F.(2d) 1007 (C. C. A. 6), the "debenture stock" was to receive dividends only out of earnings, and the court held that the undertaking to redeem it at par at the end of ten years did not make it a debt rather than stock. Fidelity Savings & Loan Ass'n v. Burnet, 62 App. D. C. 131, 65 F.(2d) 477, and Finance & Investment Corp. v. Burnet, 61 App. D. C. 78, 57 F. 444, are similar. Compare Arthur R. Jones Syndicate v. Com'r, 23 F.(2d) 833 (C. C. A. 7); Wiggin Terminals, Inc., v. United States, 36 F.(2d) 893 (C. C. A. 1).

Armstrong v. Union Trust & Savings Bank (C. C. A.) 248 F. 268, Elko Lamoille Power Co. v. Commissioner (C. C. A.) 50 F.(2d) 595, and In re Culbertson's, 54 F. (2d) 753, 757, all in the Ninth Circuit, in-

volved certificates with essential characteristics similar to the debenture bonds issued by the taxpayer. The certificates yielded a fixed rate of return which was cumulative and payable before the common stock. The instruments were silent as to whether or not their return was payable solely out of profits, but there was evidence in the Culbertson Case that over a long period of time dividends had been regularly paid irrespective of actual earnings. Provision was made for the redemption or retirement of the certificates at the end of a specified period. In each case the contention that the holders of the instruments in question should be considered creditors of the issuing company was rejected, and the certificates were held to be preferred stock. The "agreement to pay dividends at stated intervals" was construed in the Culbertson Case to be "an agreement to pay the same from the profits." The only substantial distinction between those certificates and the debenture bonds now before the court is one of nomenclature; the former had been denominated preferred stock. The petitioner urges that the name given to an instrument is not controlling, but that its inherent characteristics will determine its true nature and legal effect. This may be conceded, but it does not follow that the name by which the certificates are designated is to be completely ignored. Stocks and bonds both evidence a contract between their holders and the issuing corporation, and, in construing this contract, the language used in reducing it to writing will be indicative of the intention of the parties. See Spencer v. Smith, 201 F. 647, 651 (C. C. A. 8). Though both contain substantially similar provisions and are silent as to the source of the return, it is not inconsistent to hold that only in the case of certificates designated as bonds were the holders intended to be creditors of the corporation and the return to be interest payable irrespective of actual earnings. In our opinion the Board correctly held that the debenture holders were creditors and the interest payment a proper deduction.

The petitioner further contends that the transaction out of which the debenture bonds were issued constituted a device for the distribution of income in the guise of interest at a high rate on inflated principal. He bases this charge on the fact that the taxpayer valued at $260,000 stock of Oneida Paper Products, Inc., which the latter had valued on its own books at $129,785.51. However, as has been indicated, the balance sheet from which this figure was derived stated inventories and fixed assets at cost, and included nothing for good will or other intangibles. Since the net earnings of the Oneida Company had increased annually, and were 26 per cent. for the year ending July 31, 1929, there was some justification for taxpayer's revaluation of the stock. The Board made no finding that the purchase was a device to reduce taxes.

The order is affirmed.