MAY HOSIERY MILLS, Inc., v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 4757.

Circuit Court of Appeals, Fourth Circuit.

June 16, 1941.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

Theodore B. Benson, of Washington, D. C., for petitioner.

Arthur A. Armstrong, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Christopher S. Sargent, of New York City (Newell W. Ellison, of Washington, D. C., and Jack J. Levinson, of New York City, on the brief), for Credit Alliance Corporation, as amicus curiæ.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals determining an income tax deficiency against the May Hosiery Mills, Incorporated, the petitioner, for the fiscal year ending August 31, 1937, in the amount of $5,069.28. The opinion of the Board is reported in 42 B.T.A. 646.

There is no dispute as to the facts which were stipulated. The taxpayer corporation was formed by a merger between two corporations, one bearing taxpayer's name, and the other called National Dye Works. The merger was affected under the North Carolina statutes. The merger agreement provided for a total of 169,000 shares of stock of the new corporation divided into 43,000 shares of preference stock, 83,000 shares of class A common stock, and 43,000 shares of class B common stock, all without nominal or par value.

The preference stock was preferred as to payment of dividends and upon liquidation. The corporation was required to set apart annually 15 per centum of its profits in a sinking fund for the retirement or redemption of the preference stock. The amounts put into such sinking fund were to be used to purchase outstanding preference stock, on the open market, at a sum not to exceed the redemption price of $55.00 per share. All voting rights were allotted to the holders of common stock with the qualification that the preference shareholders were given the power to elect a majority of the board of directors whenever four quarterly preference dividends were in arrears.

In addition it was provided that should the amount in the sinking fund equal or exceed $27,500 on January 20 of any year, all sums in the sinking fund should be applied, on March 1 following, to redemption of the preference stock, provided that petitioner would not thereby be rendered insolvent. It was further provided that the preference stock might be redeemed on 30 days' notice and that all preference stock, however acquired by the petitioner, should be canceled.

During the taxable year in question petitioner purchased 891 preference shares in the open market, through a broker, paying therefor $49,165.51; $11,697.07, had been originally paid into capital upon the purchased shares. The stock so purchased was canceled.

The petitioner in its return claimed a dividends paid credit for all but $160.51 of the amount paid by the petitioner in the acquisition of the preference stock. The respondent disallowed the credit claimed and determined the deficiency above stated. From this action the petitioner appealed to the Board of Tax Appeals and, after a hearing, the Board, in August, 1940, entered an order affirming the action of the Commissioner.

Three claims were made before the Board by the petitioner: (1) That petitioner was entitled to a credit of $51,086.68 representing 15 per centum of its net earnings, which it was required by agreement to set apart during the taxable year as a sinking fund to retire its preference stock, or (2) that the credit to which petitioner is thus entitled is only $49,165.51, which is

that part of the sinking fund used during the taxable year for redemption purposes; (3) that if petitioner is not entitled to the credit claimed in (1) or (2), it may claim a dividends paid credit in the sum of $37,468.44, for the distribution of that amount in liquidation out of profits accumulated after February 28, 1913.

The pertinent statutes are Revenue Act of 1936, c. 690, 49 Stat. 1648:

"§ 26.  Credits of Corporations

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*　\*　\*　\*　\*　\*

"(c) Contracts Restricting Payment of Dividends.

\*　\*　\*　\*　\*　\*

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936." 26 U.S.C.A.Int.Rev.Acts, page 836.

"§ 27.  Corporation Credit for Dividends Paid.

\*　\*　\*　\*　\*　\*

"(f) Distributions in Liquidation. In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid.

"(g) Preferential Dividends. No dividends paid credit shall be allowed with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class." 26 U.S.C.A.Int.Rev.Acts, page 838.

Two questions are presented for consideration: (1) Is taxpayer entitled to the benefit of Section 26 (c) (2) of the Revenue Act of 1936 providing for a credit for sums required by contract to be, and actually, set aside or paid out of earnings in discharge of debt? (2) Is taxpayer entitled to a dividends paid credit under Section 27 (f) when read with Section 27 (g) of that Act?

■ In considering these points the provisions of the statutes are to be strictly construed as granting special tax exemption. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29.

■ The preference stock that was purchased cannot be considered a debt in the plain meaning of the statute permitting a credit for money paid out or set aside, "for the discharge of a debt." The preference shares were typical cumulative preference shares, entitled to voting rights under certain contingencies; these shares had no stated maturity and no right to dividends except out of profits, and had no preference over debts of the petitioner. They were evidences of capital investment, and not in any sense debts. Warren v. King, 108 U. S. 389, 2 S.Ct. 789, 27 L.Ed. 769; United States v. South Georgia Railway Co., 5 Cir., 107 F.2d 3; Commissioner v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611; Bakers' Mutual Coop. Ass'n v. Commissioner, 3 Cir., 117 F.2d 27.

These preference shares would be subordinated to the claims of contract creditors upon liquidation or insolvency, and the fact that only $13.13 per share was paid in for stock redeemable at $55.00, shows that these shares represented capital investment and not a debt.

As was well said by the member who wrote the opinion of the Board:

"The significant characteristic of a debt certain—that its payment may be forced in case of default, see United States v. South Georgia Railway Co., supra—is here lacking. At least the two elements of the contingency of the profits from which payment was to be made and the absence of a maturity date for the shares retired brand the stock here a capital interest for the

redemption or retirement of which no credit may be claimed under section 26 (c) (2) of the Revenue Act of 1936."

Under a proper construction of section 26 (c) (2) of the Revenue Act of 1936, the petitioner is not entitled to the credit claimed either for money paid in discharge of a debt, or for money irrevocably set aside for the discharge of a debt.

■ Taxpayer claims in the alternative that it is entitled to a credit of $37,468.44, as a distribution in liquidation out of profits (accumulated after February 28, 1913) constituting a dividends paid credit under section 27 (f) of the Revenue Act of 1936. This sum is arrived at by deducting $11,697.07, originally received for the shares, from $49,165.51, paid for their purchase. We do not think this payment was a distribution in liquidation.

Webster's New International Dictionary (1933) defines the word "distribute" as follows: "To divide among several or many; to deal out; apportion; allot." The preference shares in question were purchased in the open market through a broker from such stockholders as offered their stock for sale. Such open market purchases cannot be classed as a distribution or a distribution in liquidation.

■ Even if open market purchases by a corporation under the facts in this case could be considered as constituting a distribution in liquidation, the petitioner would not be entitled to the credit because of section 27 (g) of the Revenue Act of 1936, which prohibits the credit "with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class."

■■ Petitioner's contention is that the credit being allowed by section 27 (f) cannot be denied because of the provisions of section 27 (g) for the reason that the former is a special provision and the latter a general one and a general provision should not be invoked to limit a special provision. We do not think this contention is a valid one. There is no conflict between section 27 (f) and section 27 (g) and they should be read together. There is no inconsistency between the provisions of the two sections and when read together there is no ambiguity. It is therefore not necessary to decide in the event of a conflict or inconsistency between them which would prevail. Section 27 (g) clearly applies to distributions in liquidation. This is borne out by Treasury Regulations 94 Art. 27 (g)—1, which expressly states that distributions in liquidation are covered by section 27 (g).

■ The payment made for the purchase of the preference stock in the open market, where it is to be conclusively presumed that different prices were paid for the shares purchased, was not a distribution pro rata without preference and does not entitle the petitioner to a credit for dividends paid. All the holders of preference stock could not have had notice of the purchase and there was, therefore, no equal opportunity given them.

The contention urged by the petitioner that because the purchased preference shares were canceled such cancelation placed the purchased shares in a class by themselves and that therefore there was no preference shown is not sound. All of the preference shares issued were of the same character with the same provisions. The purchase of some of the stock by the petitioner did not alter their character notwithstanding the fact that the purchased shares were retired and canceled. The cancelation did not change the class to which the stock belonged when it was purchased.

The action of the Board of Tax Appeals is affirmed on all points.

Affirmed.