*Decision will be entered under Rule 50.*

Anna M. B. Foster, Transferee of the Estate of Abbie A. Sewell, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 103028. Promulgated September 16, 1941.

*T. J. Blackwell, Esq.*, for the petitioner.
*J. Marvin Kelley, Esq.*, for the respondent.

### OPINION.

Arundell: We find the facts as stipulated by the parties and set forth only those necessary to the decision of this case.

Respondent determined that petitioner is liable as transferee for a deficiency in income tax in the amount of $1,317.07 due from Abbie A. Sewell, deceased, for the calendar year 1936.

The issues are whether the sum of $10,302.20 received by petitioner's transferor was income to her and, if so, whether the failure to include in her return this sum as gross income operates to suspend the statute of limitations.

Petitioner, a resident of Miami, Florida, is the transferee of the assets of the estate of Abbie A. Sewell, deceased, within the meaning of section 311 of the Revenue Act of 1936 (hereinafter all sections referred to are from the Revenue Act of 1936).

Elwin C. Foster died on August 18, 1931, leaving a will containing the following provisions:

To Abbie A. Sewell, sister of my said wife, of Mount Dora, Florida, the use and income of the sum of seventy-five thousand dollars for and during the term of her natural life * * *.

Whereas by this will certain portions of my estate will form trust funds, now in establishing the same the person representing my estate and the person representing the trust fund are privileged at their option and by mutual agree-

ment to establish said trust funds out of securities that form a part of my estate instead of cash, and such trustee or trustees shall have discretionary power to change from time to time the fund and securities forming any trust fund as to him may be deemed reasonably necessary and advisable.

At the time of the death of Elwin C. Foster, his holdings consisted almost exclusively of stocks and bonds which, because of financial conditions, could be converted into cash only at an enormous loss. An agreement was made by and between the personal representative of the Foster estate and Abbie A. Sewell that the corpus should be held intact until a more favorable market. As a result, no distribution was made until 1935 and 1936, four years later, when the main portion of the Foster estate was distributed. On January 20, 1936, the sum of $10,302.20 "as interest" was distributed to Abbie A. Sewell in addition to that part of the estate distributed to her trustee.

During the interim between the death of Elwin C. Foster and the distribution, the personal representatives collected the income and paid all Federal income taxes.

Abbie A. Sewell, a resident of Dade County, Florida, died on October 22, 1936. Petitioner on November 23, 1936, was appointed administratrix c. t. a. of her estate. On March 15, 1937, the petitioner, as administratrix, filed a fiduciary return (Form No. 1041) showing a gross income of $2,985.08 for the calendar year 1936, part of which was received in the lifetime of Abbie A. Sewell and part of which was received in the period when petitioner was administratrix of the estate of Abbie A. Sewell (hereinafter referred to as the estate). This return was filed with the deputy collector of internal revenue at Miami, Florida, and it contained the following notation: "Abbie A. Sewell died October 22, 1936, and the income above set forth, accrued, principally during the lifetime of the deceased."

T. J. Blackwell, acting as counsel for petitioner in her capacity as administratrix, enclosed with this return a request for prompt assessment of income taxes against the estate.

An amended return showing gross income of $3,967.87 was filed September 19, 1937, which bore the following:

Does not include $10,302.20 received in August 1936 as beneficiary—Estate of Elwin C. Foster, deceased, (Administered in County Court of Dade County, Florida), tax on said $10,302.20 was paid by Estate of Elwin C. Foster.

A notice of deficiency for $1,317.07 in income tax was mailed to "Abbie A. Sewell, deceased, Anna M. B. Foster, administratrix" on March 31, 1939. An appeal to the Board by the administratrix was dismissed on September 9, 1939, for lack of jurisdiction, since petitioner had been discharged as administratrix on December 28, 1937.

On April 30, 1940, the respondent mailed a statutory notice to petitioner, as transferee, asserting the same deficiency. The present appeal is from that notice.

Petitioner contends that the determination of the respondent is in error because the estate of Elwin C. Foster paid income taxes on the $10,302.20 distributed to Abbie A. Sewell and, therefore, Abbie A. Sewell should not be taxable on this same sum when distributed to her. Petitioner's principal contention, however, is that the request for prompt assessment was sufficient to comply with section 275 (b) of the act and thereby limited the period during which the Commissioner could determine a deficiency to 18 months, and that, since no deficiency was determined until after that period, none can now be determined.

The position of the respondent is that section 275 (b) is not controlling, since the sum which was omitted from the return was an amount "in excess of 25 per centum of the amount of gross income stated in the return", and, therefore, section 275 (c) applies and the period of limitation is 5 years and not 18 months. The respondent also contends that the request for prompt assessment was of no effect, since it applied only to the facts disclosed by the original return and not those disclosed by the amended return.

Section 275 (b) provides as follows:

REQUEST FOR PROMPT ASSESSMENT.—In the case of income received during the lifetime of a decedent, or by his estate during the period of administration, * * * the tax shall be assessed, * * * within eighteen months after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate * * *.

The facts show that this was "income received during the lifetime of a decedent or by his estate during the period of administration." There was a request for prompt assessment made by the party contemplated by the statute. This request was sufficient under the statute. *Estate of O. A. Wright*, 12 B. T. A. 999. The statute further requires that the request be made after the return is filed.

In this case both the request and the return were filed at the same time, but it must be assumed that they were filed in the correct order. *Maffitt* v. *Becker*, 65 Fed. (2d) 880. The fact that the request was filed with the original return and not with the amended return is of no consequence, since the Board has held that the filing of the amended return in no way affects the running of the period of limitations. *Estelle B. Sargent*, 22 B. T. A. 1270. Thus, it can be seen that the petitioner, as administratrix, has fully complied with all the requirements of this statute. The period for determining a deficiency is limited to 18 months unless the force of this section is nullified by section 275 (c).

Section 275 (c) provides as follows:

OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed * * * at any time within 5 years after the return was filed.

The reports of the House Ways and Means Committee and of the Senate Finance Committee relating to this subsection, which was added in 1934, leave no doubt that it was meant to limit subsections (a) and (b). The pertinent parts of the Committee reports are set out below:

It is not believed that taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute. [House Ways and Means Committee Rept. No. 704, 73d Cong., 2d. sess., p. 35.]

The present law permits the Government to assess the tax without regard to the statute of limitations in case of failure to file a return or in case of a fraudulent return. The House bill continues this policy, but enlarges the scope of this provision to include cases wherein the taxpayer understates gross income on his return by an amount which is in excess of 25 percent of the gross income stated in the return. Your committee is in general accord with the policy expressed in this section of the House bill. However, it is believed that in case of a taxpayer who makes an honest mistake, it would be unfair to keep the statute open indefinitely. For instance, a case might arise where a taxpayer failed to report a dividend because he was erroneously advised by the officers of the corporation that it was paid out of capital or he might report as income for one year an item of income which properly belonged in another year. Accordingly, your committee has provided for a 5-year statute in such cases. This amendment also necessitates a change in section 276 (a) of the bill. [Finance Committee Rept. No. 558, 73d Cong., 2d sess., p. 43.]

Since the statutory requirement is that an "amount properly includible" in gross income be omitted before the longer period applies, it will be necessary to determine the nature of said sum to see if it were "properly includible" in the gross income of Abbie A. Sewell, deceased.

The facts show that the personal representatives of Elwin C. Foster, deceased, distributed this sum "as interest" to Abbie A. Sewell. If it is, in reality, interest there is no doubt but that it is "properly includible" in gross income under section 22 (a) of the act and that it is an amount "in excess of 25 per centum of the amount of gross income stated in the return."

SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries  *  *  *; also from interest,  *  *  *

The mere calling of this sum interest by the personal representatives is not enough to make it interest. *Johnson Locke Mercantile Co.*, 15 B. T. A. 1314; affd., 51 Fed. (2d) 434. Interest is generally defined to be "compensation allowed by law or fixed by the parties, for the use or forbearance of money or as damages for its detention." *Fall River Electric Light Co.*, 23 B. T. A. 168, 171. However, some courts have defined it as above, but with the addition that it is usually determined as a fixed percentage of the total sum. *Hogan* v. *Commissioner's Court*, 160 Ala. 544; 49 So. 417. The Board has held in a very recent

case, *Kena, Inc.*, 44 B. T. A. 217, that interest is not necessarily a percentage of the total sum, but could be even a percentage of the net profits which the borrower made with the loaned money. This was the holding in spite of the fact that the agreement of the parties said this percentage of the net profits was to be paid in "lieu of interest." We said:

It is not essential that interest be computed at a stated rate, but only that a sum definitely ascertainable shall be paid for the use of borrowed money, pursuant to the agreement of the lender and borrower. * * *

The lender may forego interest if he chooses. He may agree not to charge interest or to reduce the amount of interest, provided certain events occur. * * * The possibility that no interest might be payable does not affect the character of the interest when actually paid.

The sum in question in the instant case was not paid on a loan as in the *Kena* case, *supra*, but was paid for the privilege of keeping the money or securities in the estate instead of paying them over to the trustee of Abbie A. Sewell. Thus, the sum was paid as compensation for the detention of the money rather than for the use of the money. This sum was paid as "interest or in lieu of the income" to which she would have been entitled under the trust. In *Lucile Brian Harrison*, 41 B. T. A. 1217; affd., 119 Fed. (2d) 963, the petitioner was held to have received $21,000 as interest upon the principal of the trust fund to be set up in a testamentary trust. We said:

If the $21,041.41 in question was paid to petitioner as interest or as compensation in lieu of income from a delayed testamentary trust of which she was the principal beneficiary, it is taxable to her regardless of what fund it was paid from. Cf. *Minnie L. Wolf*, 32 B. T. A. 959; affd., 84 Fed. (2d) 390. * * *

* * * * * * *

But even if the $21,041.41 here involved can not be correctly denominated "interest" within the meaning of the word as used in section 22 (a) of the Revenue Act of 1928, we still think it is taxable to petitioner. If the $300,000 testamentary trust had been set up as directed by decedent's will and the income therefrom paid to petitioner, it is true that it would not have been interest paid to her. Nevertheless, the income from the testamentary trust would have been taxable income to petitioner. *Irwin* v. *Gavit*, 268 U. S. 161.

* * * * * * *

* * * It seems perfectly clear to us that this $21,041.41 payment was made to petitioner not because she was the sole heir to John H. Harrison, but to carry out the terms of a prenuptial agreement recognized in the will, and was in lieu of income which she otherwise would have received under the will from a testamentary trust which has never been set up. * * *

Upon the authority of the *Kena* and *Harrison* cases, *supra*, the sum distributed must be held to be interest. As interest it was "properly includible" in gross income of Abbie A. Sewell, deceased, under section 22 (a) of the act, and it does not matter that it was paid out of income. *Minnie L. Wolf*, 32 B. T. A. 959, 963. Thus, since this sum should have been included in gross income, it is an amount "in

excess of 25 per centum of the amount of gross income stated in the return" and by the terms of section 275 (c) the Commissioner had five years in which to determine a deficiency. This determination was made within five years of the time when the original return was filed. Therefore, the determination of the Commissioner must be upheld.

Under the conclusion that the sum is interest, the effect of the fact that the original assessment was made within 18 months after the amended return was filed need not be considered.

The only other issue raised by the pleadings or in brief which needs to be discussed is the contention of the petitioner that the taxes which the Foster estate had paid should be credited to the deficiency which we have found. The trust and the beneficiary have been held to be entirely separate entities for income tax purposes. *Anderson* v. *Wilson*, 289 U. S. 20. Since each is a separate taxpayer, the Board can not credit one with the overpayment of the other. Cf. *H. B. Perine*, 22 B. T. A. 201; and *Pine Ridge Mines Co.*, 23 B. T. A. 21.

*Decision will be entered for the respondent.*